**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

ADAM SEMPREVIVO *
c/o Kenner & Greenfield *
16633 Ventura Blvd. *
Suite 1212 *
Encino, California 91436 *

Plaintiff, *

v. * Case No. 19-_________

GEORGETOWN UNIVERSITY *
37th & O Streets, N.W. *
204 Healy Hall *
Washington, D.C. 20057 *

Defendant. *

* * * * * * * * * * * * *

**COMPLAINT**

**(REQUEST FOR JURY TRIAL)**

Plaintiff, ADAM SEMPREVIVO ("Plaintiff" or "Semprevivo"), is a student at Georgetown who is facing potential "sanctions," up through and including expulsion for: (1) allegedly making false or misleading statements on his application for admission; and (2) his father having made a substantial payment through a third party to the Georgetown University tennis coach to receive a recommendation as a "recruited" student athlete.

He brings this action for damages and injunctive relief against Defendant, GEORGETOWN UNIVERSITY ("Defendant" or "Georgetown"), to challenge the imposition of an arbitrary, and capricious disciplinary process that seeks to deprive him of Due Process of Law and constitutes material breaches of the contract between the parties. Semprevivo seeks injunctive relief preventing Defendant from revoking earned academic credits and subjecting Semprevivo to academic discipline.

## PARTIES

1. Semprevivo has just completed his junior year at Georgetown and is domiciled in California.

2. Georgetown is a private university operating as a not-for-profit corporation with its principal place of business in Washington D.C.

## JURISDICTION AND VENUE

3. This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 because of diversity of citizenship and the damages sought herein are in excess of $75,000.00.

4. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(1) because the Defendant is located in the District of Columbia. Additionally, venue is also proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in the District of Columbia.

## FACTS

### Semprevivo's Application to Georgetown

5. Prior to 2016, when Semprevivo was a minor (and unable to be legally bound by a contract), his father hired a college admissions consultant, William "Rick" Singer ("Singer"), to assist with Semprevivo's college applications. Semprevivo worked with Singer for over a year with respect to addressing routine college preparation matters.

6. Semprevivo achieved an SAT score of 1980 (640 reading – 88th percentile; 640 math – 84th percentile and 700 essay – 96th percentile) and graduated from Campbell Hall High School in North Hollywood, California, with a weighted GPA of 4.067, and received no assistance from Singer with either of these academic achievements.

7. Without the knowledge of Semprevivo, his father entered into an agreement with Singer to take specific steps for Semprevivo to be accepted to Georgetown.

8. Semprevivo was informed by Singer that the tennis coach at Georgetown, Gordon Ernst ("Coach Ernst") was a friend, and that Coach Ernst would provide a recommendation for Semprevivo during the admissions process. Coach Ernst, in fact, used one of his assigned admission slots as if he was recruiting Semprevivo to play tennis for Georgetown.

9. In or around August 2015, Singer had Semprevivo forward an e-mail that Singer had drafted to Coach Ernst as part of the application process. The materials prepared by Singer stated that Semprevivo was a tennis player and made representations about his competitive prowess.

10. On or about October 11, 2015, Singer e-mailed his assistant, Mikaela Sanford, which was copied to Semprevivo, an "activity" essay for inclusion in his Georgetown application. The subject line of the e-mail stated, "This is the Final for Activity for Gtown – MIKAELA USE THIS ONE." The essay contained falsified information concerning Semprevivo's background in tennis.

11. Singer submitted Semprivivo's application to Georgetown and typed in Semprevivo's name in the signature block. At no time did Semprevivo ever sign the application.

12. Despite the fact that these misrepresentations could have been easily verified and debunked before Georgetown formally admitted Semprevivo in April 2016, no one at Georgetown did so. In fact, Semprevivo's high school transcripts, on their face, reflect that Semprevivo's athletic endeavor of choice was basketball and that he received credit for his participation on the basketball team. His high school transcripts, which were supplied to Georgetown by Campbell Hall High School, made no reference to Adam ever having played tennis. Yet the application filled out by Singer emphasized Adam to be an Academic All-

American ranked tennis player. And his essay, also written by Singer, solely discussed Adam's love for tennis, including when it stated he "insist[s] that the sport I put my most energy into is tennis." Even a cursory examination of the two documents (application vs. transcript) would have made it clear they were absolutely inconsistent with one another. Upon information and belief no inquiry was made by Georgetown, and especially anyone associated with its admissions process, to clarify the obvious inconsistency between the activity essay Singer directed his assistant to use and Semprevivo's high school transcripts.

13. Upon information and belief, Semprevivo's SAT score and GPA were within Georgetown's academic standards. In fact, all recruited student athletes must still meet Georgetown's academic requirements.

14. On or about November 6, 2015, Georgetown mailed Semprevivo what is called a "likely letter," noting that "[t]he Committee on Admissions has conducted an initial review of your application to the Class of 2020 at the request of Mr. Gordie Ernst, Tennis Coach" and that "the Committee has ranked your admission as 'likely.'" The letter explained that candidates rated "likely" have a greater than 95 percent chance of being admitted to Georgetown and that Semprevivo would receive a final decision by April 1, 2016.

15. On or about March 24, 2016, Semprevivo was formally accepted into Georgetown for admission as a freshman beginning in the Fall of 2016. His acceptance was not conditioned on playing or participating on the tennis team.

16. Following Semprevivo's acceptance into Georgetown, his father paid a charity for Singer the sum of $400,000. Some of those funds were apparently paid by Singer to Coach Ernst for his involvement in ensuring Semprevivo was admitted into Georgetown.

**Georgetown's Knowledge of Admissions Irregularities and Waiver of Improper Conduct**

17. Upon information and belief, in or around 2017, Georgetown's Office of Undergraduate Admissions became aware of irregularities in Coach Ernst's recruitment practices and conducted an internal investigation. Coach Ernst was placed on leave in December 2017. *https://www.georgetown.edu/media-advisories/03122019b*. Upon information and belief, it was at this time that Georgetown became or should have become aware of inconsistencies involved with Semprevivo's admission.

18. Upon information and belief, as a result of the internal investigation, it was determined that Coach Ernst "had violated [Georgetown's] rules concerning admission and he separated from [Georgetown] in 2018." *Id.*

19. Georgetown established a new admissions policy in November 2018, where its Department of Athletics and the Office of Undergraduate Admissions now perform audits to determine whether any recruited student athletes are not on the roster for the sports they were recruited. *https://georgetown.app.box.com/s/6zoffweibzxdurvcak63q9lo6g1vpmfy*.

20. For the 2018 and 2019 school years, tuition payments for Semprevivo of over $100,000 (and a total of over $200,000 was submitted since admission) were made to, and accepted by, Georgetown.

21. At the time that the tuition payments were made for Semprevivo to Georgetown during the 2018 and 2019 school years, Georgetown was fully aware that:

a. Coach Ernst recommended Semprevivo's admission to Georgetown as a recruited student athlete in tennis;

b. Coach Ernst had been terminated for recommending "recruited student-athletes" who were not actually being recruited and who never participated in varsity tennis;

c. Semprevivo never became or sought to become a member of Georgetown's tennis team; and,

c. Georgetown's policy had been changed as result of Coach Ernst's actions.

22. Despite having knowledge of the misdeeds of Coach Ernst and Semprevivo's admission issues relating to Coach Ernst, Defendant: (1) continued to knowingly accept tuition payments for Semprevivo, (2) allowed Semprevivo to take and complete courses, and (3) allowed Semprevivo to earn credits for completed courses.

23. Semprevivo has earned a 3.18 grade average while a student at Georgetown.

24. From 2017 until April 3, 2019, no one from Georgetown questioned Semprevivo, met with Semprevivo, sought an explanation from Semprevivo, or attempted to discipline Semprevivo in relation to issues concerning his admission.

**Father's Criminal Complaint**

25. In or around February 2019, Semprevivo's father was charged in a criminal complaint in the United States District Court for the District of Massachusetts for mail, wire, and honest services fraud violations.

26. It was at this time that Semprevivo for the first time learned of allegations that his father had paid monies to Singer that were ultimately paid to Coach Ernst in exchange for helping Semprevivo's admission into Georgetown.

27. On or about May 7, 2019, Semprevivo's father entered a plea of guilty to conspiring to commit mail fraud and honest services mail fraud.

**Georgetown Investigates Semprevivo**

28. Upon information and belief, in its more than 200 year history, Georgetown has had numerous students who have gained admission to school by falsifying or providing misleading information on their application.

29. Semprevivo became aware of an investigation being conducted by Georgetown when he received an e-mail from Melissa Costanzi, Senior Associate Director of Admissions at Georgetown, on or about April 3, 2019, which stated:

> In light of recent allegations regarding former tennis coach Gordon Ernst, the review of the admission of certain students recommended by Mr. Ernst . . . [W]e are concerned that your application for admission may have contained inaccurate information or you may have participated in related improper activity during the admissions process . . . .

(the "Costanzi E-Mail").

30. Upon receipt of the Costanzi E-Mail, Semprevivo, through his counsel, made an inquiry to Georgetown as to what basis it was proceeding under, and why the Rules and Regulations promulgated in the Student Handbook (codified as the Honor Council System Procedures) were not being followed.

31. The Student Handbook refers students to the Honor Council System Procedures (the "HCSP"). *https://honorcouncil.georgetown.edu/system/policies*. These rules provide a specific procedure that students and Georgetown are required to follow in matters dealing with Honor System violations. Upon information and belief, there are no formalized rules separate and apart from the HCSP that address issues in the application and admission process.

32. Pursuant to the HCSP:

> Students are required to sign a pledge certifying that they understand the provisions of the Honor System and will abide by it. The Honor Council is the principal administrative body of this system. The Honor Council has two primary responsibilities: to administer the procedures of the Honor System and to educate the faculty and student body about the standards of conduct and the procedures of the system.

33. Section VI of the HCSP requires the following procedures to be complied with for alleged violations of the Honor System:

a. A report should be made, in writing, of a violation.
b. An Investigating Officer appointed by the Honor Council Executive Director shall receive the report.
c. The report shall be in writing in specific detail to justify going forward.
d. The Investigating Officer shall conduct an investigation into the matter.
e. The Investigating Officer must inform the student of the nature of the allegation and evaluate the evidence.
f. If the Investigating Officer finds sufficient evidence the matter is to be referred to the Executive Board for adjudication.
g. A hearing board will be organized which will consist of one member of the Dean's office; at least one student and one ordinary faculty member.
h. All written evidence will be prepared and provided to the student at least 7 days prior to the hearing. The student has a right to present evidence.
i. The Hearing Board, if it finds a violation by preponderance of evidence, can recommend sanctions.
j. There is a right to appeal both the finding and the sanction.

*See id.,* § VI.

34. In response to the inquiry made by Semprevivo, through his counsel, Georgetown's counsel Adam Adler, Esq. ("Adler") sent an e-mail on April 14, 2019, stating:

> The University's Honor System, which I believe your email refers to does not apply here because this concerns Mr. Semprevivo's submissions to the University and activities prior to enrolling as a student. The process being followed is that Ms. Costanzi, Ms. Armour, and I will be gathering information relating to this matter, including from Mr. Semprevivo . . . Once the information is gathered, it will be summarized and provided to Mr. Semprevivo and to the Dean of Admissions . . . [T]he University may take any action, up to and including rescission of admission and dismissal from the University.

(the "Adler E-Mail").

35. On April 15, 2019, counsel for Semprevivo responded to Adler, and indicated that Semprevivo lacked confidence in a process in which there are no standards or criteria for resolution (the "April 15, 2019 Letter"). Moreover, the April 15, 2019 Letter pointed out that

Georgetown was being disingenuous in its position that these matters had only been recently brought to its attention as the catalyst for its action because Georgetown was aware as early as 2017 of the issues concerning Coach Ernst and took steps in 2018 to address those issues by terminating his employment.

36. Finally, the April 15, 2019 Letter offered to resolve the matter if Georgetown would permit Semprevivo to simply withdraw without prejudice, maintain his earned credits, and transfer to a new school.

37. Georgetown, through counsel, responded by letter dated April 17, 2019, and indicated that Georgetown intended to be fair, but the investigative process would continue.

38. On April 17, 2019, Costanzi sent a letter to Semprevivo with twenty-nine questions, the majority of which the University was already in possession of the answers.

Finally, on April 19, 2019, Semprevivo's counsel wrote to Georgetown's counsel, capsulizing his position and again attempting to resolve the dispute. To date, Georgetown has not responded to this or any other subsequent efforts at communication.

39. On May 10, 2019, Costanzi sent Semprevivo an Admissions Review Summary Report that purportedly reflects the results of Georgetown's investigation and is intended to be submitted to the Dean of Admissions on or about May 14, 2019.

40. On May 14, 2019, Semprevivo sent Georgetown his response to the Admissions Review Summary, which noted several concerns about the process, especially misstatements of fact, and reiterated his willingness to withdraw from the University with his credits intact and no unfavorable notations on his transcript.

41. On May 14, 2019, at 1:29 pm, in-house counsel for Georgetown, Adam Adler, sent an e-mail to counsel for Semprevivo, which stated, "I am in receipt of your letters dated May 10, 2019

and May 13, 2019. With respect to the offer you proposed, Mr. Semprevivo will not be permitted to withdraw from the University during the University's review of this matter."

42. Georgetown has failed to conduct disciplinary proceedings in this case that comply with any notions of fundamental fairness.

43. None of the procedural steps of the HCSP have been followed by Georgetown. To the contrary, Semprevivo has been informed by Georgetown that sanctions will be imposed "after investigation" by a group of three administrators under a process that has never been delineated.

44. Georgetown has flagrantly violated, and continues to violate, its own HCSP in relation to its investigation of Semprevivo. Virtually all aspects of the disciplinary procedures were ignored by Georgetown – despite Semprevivo calling attention to the violations throughout all phases of this process.

**COUNT I – BREACH OF CONTRACT**

45. Semprevivo hereby incorporates Paragraphs 5 through 44 as if fully set forth herein.

46. To matriculate at Georgetown, Semprevivo was required to pay tuition as well as other fees and costs in order to participate in classes and take part in Georgetown events.

47. In consideration of the tuition paid by its students, Georgetown not only provided an education, but also rights to ensure fair process and treatment to its students in the event such students were subject to disciplinary proceedings or investigations. These rights and procedures are codified into the HCSP, and the HCSP is a contract between Georgetown and its students, including Semprevivo.

48. The provision of rights by Georgetown to Semprevivo set forth in the HCSP, which he received as a product of paying tuition, constitutes a contract whereby Georgetown was obligated

to comply with specified rules, and to not act in a manner that is arbitrary and capricious when investigating whether discipline should be imposed on Semprevivo.

49. In September 2017, Semprevivo expressly agreed to this exchange when he signed Defendant's Code of Ethics and agreed to abide by its terms and conditions including the procedure for the resolving of grievances.

50. Georgetown breached this contract by:

a. Seeking to require Semprevivo to participate in a disciplinary proceeding not authorized in the HCSP;

b. Failing to provide Semprevivo with written notice of the complaint against him and by seeking to discipline for conduct for which Georgetown knew or should have known about for approximately two years;

c. Failing to appropriately appoint an investigating officer and failing to convene an approved Honor Council Hearing;

d. Failing to inform Semprevivo of what rights he has during the subject investigation; and,

e. Attempting to discipline Semprevivo for a breach of contract that occurred prior to him being bound by the Honor Code.

51. The actions of Georgetown, as alleged herein, constitute a willful and wrongful material breach of its contract with Semprevivo.

52. Semprevivo has suffered, and continues to suffer, significant damages as a proximate result of Defendant's breaches of the contract.

53. The threatened expulsion and loss of credits, predicated on numerous material violations of the contract between Semprevivo and Defendant, has precluded Semprevivo from receiving a degree from Georgetown, deprived his family of over $200,000, and may forever bar Semprevivo from transferring his earned credits to another university.

**COUNT II – PROMISSORY ESTOPPEL**

54. Semprevivo hereby incorporates Paragraphs 5 through 44 as if fully set forth herein.

55. Semprevivo detrimentally relied upon the existence and application to him of formalized provisions of Georgetown's Honor Code that would ensure he would receive fair due process for any perceived infractions that would affect his continuing enrollment as a student at Georgetown.

56. Georgetown has failed to provide Semprevivo with appropriate due process in subjecting him to disciplinary processes that could lead to the rescission of his admission to Georgetown and his expulsion from school.

**COUNT III – UNJUST ENRICHMENT**

57. Semprevivo hereby incorporates Paragraphs 5 through 44 as if fully set forth herein.

58. Alternatively, should no contract exist between Semprevivo and Georgetown, it would constitute unjust enrichment for Georgetown to fail to provide Semprevivo with appropriate due process protections, particularly in light of his family's payment of over $200,000 (more than $100,000 of which was paid after Georgetown was aware of Semprevivo's application discrepancies) in tuition.

59. Georgetown has failed to provide Semprevivo with appropriate due process in subjecting him to disciplinary processes that could lead to the rescission of his admission to Georgetown and his expulsion from school.

60. The payment of tuition on Semprevivo's behalf provided unjust enrichment to Georgetown under the current circumstances.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Adam Semprevivo respectfully requests that this Honorable Court:

(1) Enter an injunction against Georgetown barring it from imposing academic discipline against Semprevivo based on its failure to provide Semprevivo all of his rights and procedures set forth in the HSPC;

(2) Enter an injunction against Georgetown barring it from imposing academic discipline against Semprevivo based on its imposition of an arbitrary and capricious investigative process;

(3) Enter an injunction against Georgetown barring it from imposing academic discipline against Semprevivo based on waiver and estoppel;

(4) Enjoin Georgetown from removing academic credits Semprevivo earned while at Georgetown;

(5) Enjoin Georgetown from barring Semprevivo from transferring his credits earned while at Georgetown to another university;

(6) Award any appropriate compensation to Semprevivo for any losses suffered or expenses incurred due to Georgetown's actions; and,

(7) Enter any other relief this Court deems equitable and just.

Date: May 15, 2019

Respectfully Submitted,

/s/

Mark S. Zaid
D.C. Bar #440532
Bradley P. Moss, Esq.
D.C. Bar #975905
MARK S. ZAID, P.C.
1250 Connecticut Avenue, N.W.
Suite 700
Washington, DC 20036
(202) 454-2809
(202) 330-5610 fax
Mark@MarkZaid.com
Attorney for Plaintiff

David E. Kenner, Esq.
KENNER & GREENFIELD
16633 Ventura Blvd., Suite 1212
Encino, California 91436
(818) 995-1195
(818) 475-5369
david@kennergreenfield.com
Attorney for Plaintiff
***Pending Admission Pro Hoc Vice***

Alvin E. Entin, Esq.
Joshua M. Entin, Esq.
ENTIN LAW GROUP, P.A.
633 Andrews Ave., Suite 500
Fort Lauderdale, Florida 33301
(954) 761-7201
(954) 764-2443
aentin@hotmail.com
josh@entinlaw.com
Attorneys for Plaintiff
***Pending Admission Pro Hoc Vice***